UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ISAIAH DOXEY,

                Plaintiff,                      Case No. 1:13-cv-1175

v.                                                    Honorable Robert J. Jonker

ERIKA HUSS et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heyns, Huss, Stoddard, Ball, Shreve, Risk, Riske, and Thebo. The Court will allow service of the complaint against Defendants McConkey, Schaffer, Bgverka, Kennerly, Mouralis, Woods, Jones, Wellman, and Haynes.

**Discussion**

      I.        Factual allegations

Plaintiff Isaiah Doxey is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). Defendants are Daniel Heyns, the Director of the MDOC, and the following employees at ICF: Warden Kathy Stoddard; Deputy Warden Erika Huss; Resident Unit Manager (RUM) "Unknown" Ball; Sergeants/Corrections Officers "Unknown" Woods and "Unknown" Riske; Corrections Officers "Unknown" McConkey, "Unknown" Schaffer, "Unknown" Bgverka,[1] "Unknown" Risk, "Unknown" Jones, "Unknown" Wellman, "Unknown" Shreve, "Unknown" Haynes, and "Unknown" Thebo; Physician's Assistant (PA) "Unknown" Kennerly;[2] and Nurse "Unknown" Mouralis. (*See* Compl., docket #1, Page ID#4.)

According to the complaint, on March 9, 2012, at approximately 7:30 a.m., PA Kennerly, Nurse Mouralis, Sgt. Wood, Officer Jones, and several unidentified prison officers "rushed" into Plaintiff's cell while he was lying on his bed. (Compl., docket #1, Page ID#4.) They then started to press on his pressure points in order to "force" him to give his "vitals." (*Id.*) Plaintiff assumed a fetal position, "screamed" for them to stop, and "refused medical attention numerous times." (*Id.*) Someone told Plaintiff, "[Y]ou can't we[']re going to taze you." (*Id.*) Defendants and the other officers then decided to leave the cell. One officer asked Sgt. Wood, "[D]o you want to cuff him up? Let's cuff him up." (*Id.*) Sgt. Wood replied, "[N]o, we're [going to] gas him." (*Id.*) Five minutes later, the officers "gassed" Plaintiff, even though they knew that he has chronic asthma. (*Id.*)

---

[1] Sometimes spelled "Byverka" in the complaint.

[2] Sometimes spelled "Kennelly" or "Kenney" in the complaint.

Plaintiff asked to be removed from the cell because it was filled with gas, and he backed up to his door to be cuffed. Officer Jones opened the flap on the cell door to look into Plaintiff's cell and told him to back up to the door, even though Plaintiff was already at the door. Plaintiff stated that he was at the door, but Jones replied, "No you're not." (*Id.*) Plaintiff contends that Jones deliberately ignored Plaintiff's compliance in order to force Plaintiff to remain in the gas-filled cell for a few additional minutes. Finally, after Plaintiff started knocking on the door, Jones and the other officers put him in handcuffs and removed him from his cell. As they did so, they "tried to break [his] arms on the slot," even though he was not resisting. (*Id.*)

Immediately after leaving his cell, Plaintiff asked for his inhaler because his lungs were "on fire" and were so constricted that he could not breathe. (*Id.*) Nurse Mouralis had his inhaler but she refused to give it to him, telling him that he would not receive it until he was given a medical examination. Plaintiff was then taken up some stairs, with the officers bending his fingers and arms into a painful position. (*Id.*) On the way up the stairs, an officer pulled down Plaintiff's underwear in order to humiliate him. Plaintiff was then taken to a shower.

Plaintiff asserts that another prisoner, inmate Williams, was supposed to clean up the gas inside Plaintiff's cell while Plaintiff was in the shower; however, when Williams entered the cell and started choking due to the gas, an officer told him to leave, saying, "[W]e just need to make it look good for the camera." (*Id.*) As a result, the cell was not properly cleaned and Plaintiff was forced to return to a cell that still contained the gas. Plaintiff claims that the gas exposure damaged his lungs, requiring long-term treatment with a steroid called Qvar. Plaintiff filed a grievance regarding the foregoing incidents on March 10, 2012, but he never received a response.

On May 16, 2012, Officer Shreve refused to give Plaintiff his lunch tray. Plaintiff claims that Shreve did this to deter Plaintiff from filing grievances or seeking redress for the exposure to gas. On three other occasions, other officers who are not named as defendants also refused to give Plaintiff his food trays.

Approximately one year later, Plaintiff met with an analyst from the office of the MDOC Ombudsman regarding the gas incident. On or about May 14, 2013, Officer McConkey told Plaintiff that he would be assaulted for speaking to the Ombudsman. McConkey also told a prisoner in the cell next to Plaintiff's to "go through [the] wall" and assault Plaintiff, because Plaintiff was a "rat," but the prisoner refused. (*Id.*)

On or about May 30, 2013, McConkey allegedly told Officer Wellman to refuse to give Plaintiff a shower because Plaintiff wrote a grievance against McConkey. Wellman did so.

On or about August 22, 2013, Officer Thebo refused to give Plaintiff his lunch tray, stating, "[T]ry not to piss off 2nd shift and you'd get your trays. It isn't personal." (*Id.* at Page ID#5.) The next day, Officer Risk spit in Plaintiff's food, allegedly in retaliation for Plaintiff's "issue with McConkey" and for Plaintiff's complaints to the Ombudsman. Later, Officer Schaffer stopped by Plaintiff's cell and asked him, "[H]ow'd [you] like that spit loaf?" (*Id.*)

On or about August 27, 2013, Officer Schaffer tore up Plaintiff's mail and told him, "If you continue to write grievances we[']re going to beat your ass like we did Harry." (*Id.*)

On or about August 28, 2013, Officers Bgverka and Schaffer refused to give Plaintiff his food tray, calling him a "rat." (*Id.*) The next day, Officer Schaffer threw Plaintiff's food tray into his cell, causing the food to land on the floor. Officer Bgverka observed the incident and did nothing to stop it.

On or about August 31, 2013, while they were handing out food trays, Officer Haynes told Officer Schaffer, "I think we[']re short a tray." (*Id.*) Schaffer responded, "[N]o Doxey's not eating[;] he's been lying on McConkey and Wilson." (*Id.*) Haynes did not give Plaintiff a food tray. Schaffer also stated, "[G]ot me a new shirt yesterday, know what it says? Stop snitching!" (*Id.*)

On or about September 15, 2013, Officer Schaffer refused to give Plaintiff and inmate Harry their "store bags," stating, "You niggers don't have shit coming!" (*Id.*) Schaffer later came to Plaintiff and said that he would give Plaintiff his bag if Plaintiff took inmate Harry's bag. Plaintiff refused. Plaintiff and Harry did not receive their bags until 9:30 p.m. that evening, while other prisoners received theirs at 3:00 p.m.

Plaintiff claims that he lives in constant fear for his life and his physical safety. He asserts that unit one at ICF is "notorious" for "malicious, sadistic and wanton infliction of pain," and that "[t]aking prisoner's food trays, showers, mail and yards [is] the norm," as is "[j]umping on prisoners in handcuffs and using chemical agents unjustifiably and excessively." (*Id.*) He claims that Defendants Huss, Stoddard, Ball, and Heyns are aware of the other Defendants' "propensity to be violent" and "propensity for harming prisoners"; however, they did nothing to prevent the harm to Plaintiff. (*Id.*) Plaintiff asserts that Huss, Stoddard, Ball and Heyns "tacitly encouraged" the other officers to do as they pleased. (*Id.*)

As relief, Plaintiff seeks compensatory and punitive damages, as well as criminal charges against the officers who used excessive force on him.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Riske

Plaintiff's complaint contains no allegations concerning Sgt./Officer Riske. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Thus, Defendant Riske will be dismissed for failure to state a claim.

### B. Defendant Risk

#### 1. First Amendment

Plaintiff alleges that Officer Risk spit in his food in retaliation for Plaintiff's "issue with McConkey and for speaking to the Ombudsman." (Compl., docket #1, Page ID#5.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See*

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action.  He has not presented facts to support a reasonable inference that Defendant Risk's actions in August 2013 were

motivated by Plaintiff's grievance against other officers in March 2012, Plaintiff's communication with the Ombudsman about the those officers in May 2013, or any other protected conduct. Thus, Plaintiff's speculative allegations fail to state a retaliation claim against Risk.

2. Eighth Amendment

Plaintiff also claims that when Risk spit in his food, he violated Plaintiff's rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying

deliberate indifference standard to conditions of confinement claims)). Plaintiff does not allege any injury or harm resulting from Risk's conduct, nor does he allege that Risk's conduct posed an objectively serious risk to Plaintiff's health or safety. Thus, he fails to state an Eighth Amendment claim against Risk.

Moreover, to the extent that Plaintiff was aware of the spit in his food when he received the tray, and then chose not to eat the food, Risk's actions would have deprived Plaintiff of only a single meal. The deprivation of one meal, however, generally does not impose a sufficiently serious risk to an inmate's health to implicate a prisoner's Eighth Amendment rights. *See White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993) (affirming dismissal of Eighth Amendment claim about missing one meal as frivolous and indisputably meritless); *Davis v. Putnam*, No. 1:10–CV–01655, 2011 WL 1298117, at *2 (E.D. Cal. Mar. 31, 2011) ("Spitting in a person's food does not rise to the level of a serious harm in violation of the Eighth Amendment . . . . [Moreover,] Plaintiff has failed to allege how taking of rations on one day created a substantial risk of serious harm."). Thus, Plaintiff does not state an Eighth Amendment claim against Risk. Consequently, Defendant Risk will be dismissed.

### C. Defendant Thebo

Plaintiff asserts that Officer Thebo refused to give Plaintiff a lunch tray in August 2013, telling Plaintiff that he would get his trays if he did not "piss off 2d shift." (Compl., docket #1, Page ID#5.) Plaintiff asserts that Thebo's actions were a form of retaliation. As with Plaintiff's retaliation claim against Risk, however, none of Plaintiff's allegations support a reasonable inference that Thebo's actions were motivated by Plaintiff's grievance against other officers in March 2012,

or his discussion with the Ombudsman regarding those officers, which occurred approximately three months before Thebo's conduct.

Also, as discussed with respect to Plaintiff's Eighth Amendment claim against Defendant Risk, Plaintiff does not allege that the deprivation of one meal by Defendant Thebo imposed a serious risk to his health or safety. Consequently, Plaintiff does not state an Eighth Amendment claim against him.

### D.  Defendant Shreve

Plaintiff alleges that Officer Shreve deprived Plaintiff of a lunch tray in May 2012 "as a way to deter [Plaintiff] from filing grievance[s] and seeking redress for being gassed and forced to sleep in the gas daily." (Compl., docket #1, Page ID#4.) Like Plaintiff's retaliation claims against Defendants Risk and Thebo, however, his claim against Shreve is wholly conclusory. Moreover, for the reasons already discussed with respect to similar claims against Defendants Risk and Thebo, Plaintiff's allegation that Shreve deprived him of a single meal on one occasion does not state an Eighth Amendment claim. Thus, Defendant Shreve will be dismissed.

### E.  Defendants Heyns, Huss, Stoddard & Ball

Plaintiff asserts that MDOC Director Heyns, Warden Huss, Deputy Warden Stoddard, and RUM Ball are liable because they failed to prevent their subordinates from harming Plaintiff. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir.

2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As the Sixth Circuit has repeatedly emphasized:

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff claims that Heyns, Huss, Stoddard, and Ball were deliberately indifferent to the propensity of officers in Unit one at ICF to engage in violent conduct, but he provides no support for this assertion in his allegations. Indeed, he identifies only one incident in which officers allegedly used excessive force on him or subjected him to a constitutionally-significant risk of harm. None of the facts alleged in the complaint indicate that Defendants Heyns, Huss, Stoddard, or Ball were aware of a risk that other prison officers would attempt to harm Plaintiff or otherwise violate his constitutional rights, let alone that Heyns, Huss, Stoddard, or Ball were deliberately indifferent to such a risk. In short, Plaintiff has not alleged a plausible connection between his injury and any specific conduct by Defendants Heyns, Huss, Stoddard, or Ball. Absent allegations that these

Defendants were personally involved in any unconstitutional conduct, Plaintiff does not state a claim against them.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, Huss, Stoddard, Ball, Shreve, Risk, Riske, and Thebo will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  At this stage of the proceedings, the Court concludes that Plaintiff's allegations state a claim against the remaining defendants.  Thus, the Court will allow service of the complaint against Defendants McConkey, Schaffer, Bgverka, Kennerly, Mouralis, Woods, Jones, Wellman, and Haynes.

An Order consistent with this Opinion will be entered.


Dated:      May 13, 2014             /s/ Robert J. Jonker
                                                        ROBERT J. JONKER
                                                        UNITED STATES DISTRICT JUDGE